## SHROPSHIRE *vs.* BURNS, Adm'r.

[ACTION ON PROMISSORY NOTE GIVEN BY MINOR FOR PURCHASE OF HORSE, AND SOLD BY ADMINISTRATOR AFTER HIS DEATH.]

1. *Infant, contract of; generally voidable; not void.*—Generally in this State, the contracts of an infant are voidable, but not void. And such contracts may be affirmed or avoided by such infant after he becomes of age.

2. *Infancy, defense of; by whom only can be pleaded.*—Infancy is a personal privilege, and it can only be taken advantage of by the infant himself, or by his personal representative.

3. *Infant, ratification of contract of; what will amount to.*—In like manner, the infant or his personal representative may affirm and ratify his contracts after he becomes of age; and the acts which will amount to ratification by an infant himself, will amount to a ratification after his death by his administrator or executor.

4. *Same.*—If a minor above the age of twenty, but under the age of twenty-one years, purchase a horse and give his promissory note for the purchase-money, and the horse is delivered to him, and the minor then dies before he attains his majority, and the horse comes into the possession of the administrator of the infant's estate, who sells the horse as the decedent's property, with a full knowledge that it had been so purchased by the infant, and had not been paid for, this is a a ratification of the sale.

APPEAL from Circuit Court of Dallas.
Tried before Hon. B. L. WHEELAN.

The facts are sufficiently stated in the opinion.

PETTUS & DAWSON, for appellant.—The contracts of infants, not made for necessaries, are generally *voidable,* not *void,* and may be ratified by the infant after he is of age. 1 Pars. on Cont. 243; Chitt. on Cont. 145-6, and notes. A promise to pay the debt, made to the creditor, is generally a ratification; and there are acts from which such promise will be inferred. If an infant have the property purchased, after attaining his majority, and sell it, he thereby ratifies the contract of purchase, and the law in-

fers a promise to pay.—Chitt. on Cont. 145–6; 1 Pars. on Cont. 268, 271, 272.

The contract of an infant may be ratified by his administrator. The case of *Jeffords, Adm'r, v. Ringgold & Co.*, 6 Ala. 544, is directly in point. There, as here, the infant died under age, and his administrator ratified the contract.

It being, then, settled that an administrator of an infant may ratify the contracts of his intestate, without any new consideration, it is a necessary inference that any act which, if done by the infant, would be a ratification, will, when done by the administrator, be also considered a ratification of the contract. In fact, this necessarily follows from permitting the administrator of an infant to plead his infancy.

In this case, the infant died in possession of the horse purchased by him ; and the defendant, as the administrator of the infant, took the horse and sold him, knowing at the time all the facts of the case. This sale alone was a ratification. The court, in the first charge given, says in substance, that no act will amount to a ratification, unless the defendant intended to ratify the contract. This rule applies only to *mere promises ;* but there are many *acts* from which a ratification will be absolutely deduced, without any regard to the intent. If an infant buy a horse and retain him after age, and payment should be demanded and refused, and then the plaintiff demand the horse and a rescission of the contract, and this also be refused, no intention to ratify could be inferred ; yet this would be in law a complete ratification.—1 Pars. on Cont. 270–1. But the court not only charged that the *intention* to ratify must be proved, but the charges deny to the jury the right to infer that intention from the sale of the horse.

ALEXANDER WHITE, *contra.*—Under the law, the administrator was bound to take into possession a horse left by his intestate, and claimed by him as his property; and as whatever is done by an administrator, unless shown to the contrary, must be presumed to be lawfully done, the court

must assume that he sold him under an order of court and in conformity and obedience to law.

These acts had no reference, as a matter of fact, to the contract between appellant and the intestate of appellee; it does not appear that defendant knew of the existence of the note, or that the plaintiff looked to him for payment of the note. It is not shown that defendant gave any assent of the mind to the act done by the infant in giving the note, nor that he ever thought of it.

*Ratify*, signifies " to approve, to sanction." Ratification is the act of ratifying *something done by another.*—Webster's Dict., *Ratification*, and *Ratify*. In sanctioning or approving an act done by another, there must be recognition in the mind of the act done, or else a man can approve something he knows nothing of, or does not think of. That is, that he can give the assent of his mind to a thing without knowing what it is that he assents to. This is an impossibility and absurdity.

The law requires the assent of the infant himself, when made after he comes of age, to be precise and explicit.

There must be such a promise to pay, or such express acts, as would be equivalent to a *new contract.*—Bingham on Infancy, 67 ; Chitt. on Cont. 146.

The promise must be to the party in interest, or to his agent.

It must be voluntary, free, and with a full knowledge that he would not be liable.—Bingham on Infancy, 68, note 6 ; Story on Cont. § 70.

It can not reasonably be assumed that an administrator of an infant would be held to have ratified an act of the infant, when the same act would not have been a ratification by the infant, had he lived.

The act by which the administrator is sought to be charged, is the *sale* of the horse.

This alone would not have bound the infant; certainly not, unless he had sold him after he came of age.

No binding ratification of a contract can be made by an infant until he comes of age.—Story on Cont. § 68 ; Annual Dig. 24, 339, § 10 ; 16 N. H. 385.

This is an executory contract; and as to such there must be not only *an acknowledgment* of liability, but an express promise, voluntarily and deliberately made by the infant, *upon his arriving at the age* of maturity, and with the knowledge that he is not legally liable.—Story on Cont. § 69; *Curtin v. Patton,* 11 S. & R. 305; *Obin v. Hondlett,* 13 Mass. 237; *Boston Bank v. Chamberlain,* 15 Mass.; *Robbins v. Eaton,* 10 N. H. 561; *Rainsford v. Rainsford,* 1 Spears Eq. 385; *Tucker v. Montain,* 10 Peters 73; *Jackson v. Carpenter,* 11 John. 537; 2 Kent Com., top page 264, mar. 238, note (*a*).

The same evidence ought to be required of the ratification of a voidable contract after full age, as of the execution of a void one.—*Rogers v. Hund,* 4 Day, 57.

There must be some act of the infant after he reaches maturity, showing an *intention* to ratify; mere omission to ratify is not sufficient.—2 Kent Com., top page 264, note 3; *Wallace v. Lewis,* 4 Harring. R. 75; *Harris v. Cannon,* 6 Geo. 382; *Scott v. Buchanan,* 11 Humph. 468; *Tibbitts v. Gerrish,* 5 Fort, (N. H.) 41; *Taft v. Sergent,* 18 Barb. 320; *Thurlow v. Gilmon,* 40 Maine.

Declaration must be very clear, and with *a view to ratification,* to be sufficient.—*Hoyle v. Stow,* 2 Dor. & Battle, 320.

An infant can not bind himself for necessaries, when he has a parent or guardian to supply his wants.—*Hull v. Connoley,* 3 McCord L. R. 6; *Guthrie v. Murphey,* 4 Watts, 80; *Edwards v. Higgins,* 2 McCord Ch. 16; *Khin v. Larramore,* 2 Paige, 419; *Warling v. Toll,* 9 John. 141; *Mortara v. Hall,* 6 Sim. 465; *Bainbridge v. Pickering,* 2 Bl. Rep. 1325.

Here it is shown that he had a guardian who supplied him in the very particular, (a horse,) and who objected to this purchase because he had supplied him.—*Cooke v. Deaton,* 3 C. & P. 114.

It is not necessary in this case to decide whether an administrator can in any case affirm the act of an infant intestate who died without attaining his majority, but only whether the facts in this case constitute a ratification.

The following is, however, respectfully submitted in ref-

erence to the case of *Jefford, adm'r, v. Ringgold & Co.*, 6 A. R. 544:

In the head-note it is said that the administrator of an infant may *verbally* ratify the act of the infant, when the proof showed that the note was given for a house and lot in Lowndesborough, and that the *defendant* had received a deed for the house and lot. This deed could not have been made to a dead man, and must have been made to the defendant. Here was a distinct and direct act of re- cognition of and taking a benefit to himself personally under the contract; after this, *he* may have been estopped from saying that the contract was not valid, but would this have been binding upon a subsequent administrator ? The deed to the defendant as administrator would vest no title in the estate. An administrator is not authorized to re- ceive a deed for the estate he represents. The deed should be made to the heirs ; and it is only in certain stat- utory contingencies that an administrator has anything to do with the lands, and never has anything to do with *taking title* to them. In that case, then, he was not only doing a thing in taking the deed not *required* by law, but a thing not authorized by law, and put himself in a posi- tion in which he could be estopped from denying the valid- ity of the contract, because he went beyond the line of his duty as administrator *expressly* to affirm the contract. The question occurs, could he bind the estate by taking, under a contract of his intestate, *property* to himself *indi- vidually ?* In taking the deed he was necessarily informed of the contract, for it had direct and special reference to the contract and the parties to the contract.

An administrator succeeds to the rights and liabilities of his intestate, but this does not give to him the right to enlarge the liabilities of his intestate, nor to make valid that which is voidable.

Ratification must be of an act *done in infancy, after* ar- riving at adult age. I mean ratification by the party him- self.

The first thing is, an act done by the party while under the age of twenty-one years of age. The next is, a ratifi-

cation of that act *after* he is twenty-one years of age. The party dies before he arrives at twenty-one years of age; he therefore *never* becomes of age; he is, and always must be, an infant.

Now, he could not ratify himself, if living. Can his administrator, as his representative, do that which he himself could not do?

The administrator is his representative, as *he was* when *he died*, not as he would have been had he lived longer. The administrator of an infant can not, by lapse of time, become the administrator of an adult; nor can he, in his representative capacity, attain or impute to one who died an infant, the majority which he would have attained had he lived.

In this case, there was a full knowledge that the guardian of the infant disapproved of the purchase; and appellant took the infant's note, with security, which was perfectly good, lies by and allows the administrator to sell the horse as belonging to his intestate, without a notice of any claim for the horse, or upon the administrator, and attempts to fix upon him a ratification of the note of the infant by an act in the doing of which he never thought of the note, and it is not shown that he knew there was such a note, and which act was in the direct line of his duty as administrator.

If this be the law, that a mere sale by an administrator of property of his infant intestate, is to be regarded, "*pro-priore vigore*," as a ratification of the voidable purchase of the infant, then the administrator is in effect deprived of the right to disaffirm, and compelled to affirm, at least as to all contracts of which he was not advised as to the perishable property of the infant. He is required by law to sell it, or to distribute, (and distribution would have the same effect as an act of ratification as a sale,) and in either event, according to the rule laid down by the appellant's counsel, he would be liable.

In such case, all that a creditor on such a contract as this would have to do, would be to lie by until the administrator had sold or distributed the property, and then sue

the administrator, and prove that he had sold or distribu-
ted the property.

PETERS, J.—This is an action at law founded on a
promissory note, with security, made by an infant for the
purchase-money of a horse. The infant died in possession
of the horse before attaining his majority, and the admin-
istrator of his estate, who is the appellee in this court,
took possession of the horse after his intestate's death, as
a part of his estate, and sold him as such, and converted
the proceeds of the sale to the use of the estate which he
represented. The proof also shows that the infant and
the vendor of the horse were both warned by the infant's
guardian, who is another person than the administrator,
that the horse would not be paid for by the guardian if
sold to his ward. It also appeared that the infant owned
a pony horse before the purchase of the horse in contro-
versy in this case, and that his estate consisted in one-
fourth interest in twenty negro slaves, and four thousand
dollars in cash in his guardian's hands. And when the
purchase was made he was above twenty years of age.

Upon these facts the court was asked by the plaintiff to
charge the jury on the trial below, that if they "find from
the evidence, that on the 12th day of September, 1860,
the plaintiff sold and delivered a bay horse to R. F. Burns,
the defendant's intestate, and that the note read in evi-
dence was then and there executed by said R. F. Burns
and R. E. Perry for the price of said horse; and that at
the time of said sale of said horse, said R. F. Burns was
under twenty-one years of age and over twenty years of
age; and that said R. F. Burns took said horse at the time
of the sale, and kept and used said horse until the said
R. F. Burns died; and that said R. F. Burns died in the
fall of 1860, and under twenty-one years of age; and that
after the death of R. F. Burns, this defendant, as the ad-
ministrator of said R. F. Burns, knowing all the facts in
reference to the giving of said note and the purchase of
said horse, and that said note had not been paid, took
possession of said horse as such administrator, and sold

said horse as such administrator; then the plaintiff is entitled to recover the value of said horse and interest thereon, not exceeding the amount of the note and interest thereon." This charge was refused, and the plaintiff excepted. In this the learned judge of the court below erred.

For a long series of years our distinguished predecessors in this tribunal have treated the contracts of infants, in this State, as voidable, and not as void.—*Freeman v. Bradford*, 5 Port. 270; *Slaughter v. Cunningham*, 24 Ala. 260; *Manning v. Johnson*, 26 Ala. 446; *Clark & Co. v. Goddard*, 39 Ala. 164. But the contract of a minor can be avoided only by himself or his personal representative. It is a personal privilege, and only the person to be protected by it, or his administrator or executor, in such case as he can make a will, can avoid or affirm it.—*Jefford v. Ringgold*, 6 Ala. 544; Rev. Code, §§ 1910, 1916. And if the administrator or executor of the infant means to avoid or repudiate the contract made by the minor, he must do so in like manner as the minor would be required to do. If he fails to do this, the same rule which applies to a ratification or affirmance by the infant applies to him. 6 Ala. 544, *supra*. Here the administrator retained possession of the horse after the death of the infant, and sold it as a part of his estate in his hands to be administered. Such acts would have bound the minor himself as an affirmance or ratification of the contract of sale. And I see no sufficient objection why they should not also bind his representative for like reason as they would bind the minor himself. Such, it seems to me, is the current of our decisions and the dictates of justice. These decisions necessarily become rules of property in this State, and for this reason they should not be departed from.—*Manning v. Johnson*, 26 Ala. 446; *Weaver v. Jones*, 24 Ala. 420; *Baker v. Gregory and Wife*, 28 Ala. 546.

The judgment of the court below is reversed, and the cause remanded for a new trial.