" Jane Burdes ", Petitioner, *v.* " Gil Burdes ", Respondent.*

Domestic Relations Court of the City of New York, Family Court,
New York County, June 24, 1949.

No appearances.

I. Montefiore Levy, J. This is an application of a wife for support from her husband; he refuses to do so upon the ground she was not a virgin at the marriage. Thus is posed a problem which has affected the philosophy of mankind for many years. In the ages gone, there were double standards both in the morals and conduct of the sexes. That exists today in many sections of the world. In the United States, both in personal and property rights, man and woman are substantially equal. Usually the law is behind convention, but in sexual standards the reverse is true. The law sees no difference if an act is committed by either man or woman. Society does! Thus it is taken for granted that at marriage the major number of men are not continent. Not so women — it is assumed the large percentage of women are pure.

The woman here admittedly was not a virgin. Neither was the man. Prior chastity is not a necessary qualification for marriage but chastity, if insisted upon, may be made a necessary qualification. (*Domschke* v. *Domschke,* 138 App. Div. 454.)

The woman was no more than the man under an obligation to inform the other as to his or her status. Many argue there is an affirmative duty of informing; that (because of a presumption of chastity) suppression amounts to fraud.

Concealment or failure to disclose material fact or suppression of truth concerning a material matter may justify annulment of marriage. (*Costello* v. *Costello,* 155 Misc. 28.)

A marriage although consummated will be annulled for fraud where the woman on inquiry of her intended husband stated that she had been the wife of a man then deceased, and that he

---

* Names fictitious for publication purposes.

was the father of her child, when in truth she had been his mistress and the child was a bastard. Prior chastity is not a necessary qualification for marriage, but chastity, if insisted upon, may be made an essential qualification. (*Domschke* v. *Domschke, supra.*)

In the case at bar both are at fault, if fault it be, of prior sex relation. Any philosophy to the contrary, man still looks to the woman as of a finer breed. As the bride walks to the marriage altar, one thinks of her as pure, unsullied, a dainty person to be treated with understanding and respect — reminding us of Wordsworth's lines:

> " She was a phantom of delight
> When first she gleam'd upon my sight
> A perfect woman, nobly planned
> To warn, to comfort and command.
> And yet a Spirit still, and bright
> With something of an angel-light."

Not so are the reflections aroused by the man. Even nature challenges a single standard for she visits upon the woman solemn consequences. She may give birth to the most appealing creation in the world — a baby. But even if both are placed upon the same plane of morality, the man's prior sexual indulgence was known; it was the wife who withheld information.

Both parties here are South American by birth and breeding. Women's morals are rigidly observed in that territory; not so regarding the male. This may explain the husband's saying that his wife knew that, if he were aware of the fact she was not a virgin, he would not have married her. He, nevertheless, feeling no sense of sin admits that he had illicit relations before his marriage.

He says, one day — she, three days — after the marriage he left her, upon the ground she was not a virgin. " Chastity * * * is a quality which lies at the foundation of * * * marriage ". (*Reynolds* v. *Reynolds,* 3 Allen [85 Mass.] 605, 608.)

Judge JENKS, in *Domschke* v. *Domschke* (*supra*) says, " It may be said that in our civilization a man assumes that his proposed wife is chaste and that without reason he would not pay her the insult of query as to her virtue. But I can conceive of a case where a man before consenting to a contract of marriage might ask such a question of the woman outright, and rely upon her answer."

" While, then, it is true that marriage contracts are based upon considerations peculiar to themselves and that public policy

is concerned with the regulation of the family relation, nevertheless, our law considers marriage in no other light than as a civil contract." (*Di Lorenzo* v. *Di Lorenzo*, 174 N. Y. 467, 472; Domestic Relations Law, § 10.)

In the majority of instances where virginity is involved, the husband either knew his wife was not a virgin or it troubled him little, or no evidence was produced to show deception.

" And if a man consent to contract to marry a woman who falsely represents herself as chaste and yet marries her who has been unchaste, he may thereby be induced to agree to a contract which necessarily requires personal performance by one who is of a different status than he was led to believe."

" It has been said, also, that if a widow conceals her previous marriage and betroths herself as a virgin, this would be a fraud and would avoid the contract." (2 Parsons on Contracts, p. 67; *Palmer* v. *Andrews*, 7 Wend. 142.)

In this case you have: (a) the husband asserting he would not have entered into the marriage had he known the fact and (b) the woman confessing to him she was not a virgin.

This disposes of an issue usually difficult to prove.

Under the facts here the court believes the husband was justified in leaving the wife and she is not entitled to his support.

The application for support is denied.